**LSKS** LEVINE SULLIVAN
KOCH & SCHULZ, LLP

321 West 44th Street
Suite 1000
New York, NY 10036
(212) 850-6100 | Phone
(212) 850-6299 | Fax

David Schulz
(212) 850-6103
dschulz@lskslaw.com

December 10, 2015

**VIA FAX (631-712-5642)**

Hon. Leonard D. Wexler
Senior United States District Court Judge
944 Federal Plaza
Central Islip, New York 11722

    Re:    USA v. Burke, No. 15-CR-0627 (LDW)

Dear Judge Wexler:

    We write on behalf of Newsday LLC, News 12 Networks LLC, American Broadcasting Companies, Inc., d/b/a/ WABC-TV, The Associated Press, Daily News, L.P., NBC New York (WNBC-TV), The New York Times Company, and NYP Holdings, Inc. (collectively, the Press Objectors) to object to the planned closure of the courtroom during tomorrow's detention hearing in this highly significant criminal prosecution of a former high ranking police officer in Suffolk County. (Dkt. No. 7). The press and public have a well-established First Amendment right to be present to observe this hearing that can only be overcome by on the record findings that the strict standards established in *Press-Enter. Co. v. Super. Ct. of California*, 478 U.S. 1 (1986) ("*Press-Enterprise II*") have been satisfied. We respectfully urge the Court to reconsider its order closing the detention hearing in this prosecution.

    On Wednesday, December 9, 2015, this Court announced without prior notice that it would exclude the press and the public from the detention hearing against former Suffolk County Police Officer James Burke, who has been charged with abusing his position of authority to beat a criminal suspect and then conspiring to conceal his role in the assault. It goes without saying that the prosecution of such serious alleged misconduct by a public official is of utmost concern to the citizens of Suffolk County, and more generally to all New Yorkers. The public already is severely restricted in its ability to monitor the conduct of police in this State, *see, e.g.,* P.O.L. §50-a (prohibiting public disclosure of any police personnel file), and to throw a highly unusual wall of secrecy around this prosecution would only further public concerns about police accountability and the fair administration of justice. As Chief Justice Burger famously observed, "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers v. Virginia*, 448 U.S. 448 U.S. 555, 572 (1980).



The First Amendment provides an affirmative, enforceable right of public access to most proceedings in a criminal prosecution. *See, e.g., Richmond Newspapers*, 448 U.S. at 580-581 (right of access to criminal trials); *Press-Enterprise II*, 478 U.S. at 13 (right of access to pretrial criminal proceedings). This constitutional access right unambiguously extends to pre-trial detention and bail hearings. *See U.S. v. Abuhamra*, 389 F.3d 309, 323 (2d Cir. 2004); *U.S. v. Leonardo*, 129 F. Supp. 2d 240, 243 (W.D.N.Y. 2001) (citing *U.S. v. Chagra*, 701 F.2d 354, 363 (5th Cir.1983) ("[p]retrial release proceedings require decisions that attract significant public interest, and invite legitimate and healthy public scrutiny")).

The constitutional access right exists to protect a number of important interests. As the Supreme Court has explained:

> The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.

*Press-Enter. Co. v. Super. Ct. of California*, 464 U.S. 501, 508 (1984) ("*Press-Enterprise I*") (citation omitted). The crucial role that public access plays in ensuring respect for the results produced by our courts is perhaps best illustrated by considering the converse:

> "Secret hearings—though they be scrupulously fair in reality—are suspect by nature. Public confidence cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view."

*Gannett Co. v. DePasquale*, 443 U.S. 368, 429 (1979) (Blackmun, J., concurring in part and dissenting in part) (citation omitted); *see also Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 587 (1976) (Brennan, J., concurring) ("[s]ecrecy of judicial action can only breed ignorance and distrust of courts and suspicion concerning the competence and impartiality of judges"). Beyond its critical role in the functioning of the judicial system itself, the right of access provides an outlet for community hostility, educates the public about the judicial process, and fosters an informed electorate. *E.g., Richmond Newspapers*, 448 U.S. at 592-93; *Globe Newspaper Co. v. Super Ct.*, 457 U.S. 596, 604-05 (1982); *Press-Enterprise I*, 464 U.S. at 508-09.

All of these concerns apply fully to a detention hearing. As the First Circuit has observed, "the bail decision is one of major importance to the administration of justice, and openness will help to assure the public that the decision is properly reached." *In re Globe*



Hon. Leonard D. Wexler
December 10, 2015
Page 3

*Newspaper Co.*, 729 F.2d 47, 52 (1st Cir. 1984). Moreover, "there is an interest in conducting such [bail] hearings in open courtrooms so that persons with relevant information can come forward." *Abuhamra*, 389 F.3d at 323.

Given the importance of contemporaneous public access to criminal proceedings, the Supreme Court has mandated strict standards that must be met before the First Amendment right of access may be abridged. While courts have applied different verbal formulations at different times, the constitutional right may properly be limited only where four distinct requirements for closure have been satisfied:

1. The party seeking to restrict access must demonstrate a *substantial probability* of prejudice to a compelling interest. *See, e.g., Richmond Newspapers*, 448 U.S. at 580-81; *Press-Enterprise I*, 464 U.S. at 510; *Press-Enterprise II*, 478 U.S. at 13-14

2. The party seeking to restrict access must demonstrate that there is *no alternative* to adequately protect the threatened interest. *Press- Enterprise II*, 478 U.S. at 13-14; *In re The Herald Co.*, 734 F.2d 93, 101 (2d Cir. 1984).

3. Any restriction on access must be *narrowly tailored*. *See, e.g., Press-Enterprise II*, 478 U.S. at 13-14.

4. Any restriction imposed on access must be *effective* in protecting the threatened interest for which the limitation is imposed – a constitutional right may not be restricted for a futile purpose. *See Press-Enterprise II*, 478 U.S. at 14; *In re The Herald Co.*, 734 F.2d at 101.

A court may not properly restrict public access without prior notice and without making findings of fact, on the record, demonstrating that these standards have been met. *See, e.g., Press-Enterprise I*, 464 U.S. at 510; *Press-Enterprise II*, 478 U.S. at 13-14; *In re The Herald Co.*, 734 F.2d at 103. Here, the requisite findings have not – and likely could not – be made:

*First*, there has been no showing that an open courtroom would create a substantial probability of harm to a compelling interest. While we understand that some concern exists about possible prejudice to defendant's right to a fair trial, the Second Circuit has made clear that the existence of pretrial publicity, alone, does not justify closure. Rather, "in general, openness acts to protect, rather than to threaten, the right to a fair trial." *Stewart*, 360 F.3d at 102. And as the Supreme Court has stressed, "[p]rominence does not necessarily produce prejudice, and juror *impartiality*, we have reiterated, does not require *ignorance*." *Skilling v. U.S.*, 561 U.S. 358, 381 (2010) (emphasis in original). It is a premise of our justice system "that jurors will set aside their preconceptions when they enter the courtroom and decide cases based on the evidenced presented." *Id.* at 399 n.34.


Experience has shown, time and again, the exaggerated nature of concerns about the inability to seat a jury unaffected by press coverage, even in cases where the pretrial publicity has been far more intense than in this case. *See e.g., In re NBC, Inc.*, 635 F.2d 945 (2d Cir. 1980) (despite an "explosion of publicity in the national and local media ..., only about one-half of the prospective jurors indicated that they had ever heard of Abscam"); *CBS, Inc. v. U.S. Dist.C.t (U.S. v. DeLorean)*, 729 F.2d 1174, 1179 (9th Cir. 1984) (in highly publicized prosecution "only eight or ten" members of a large venire had "anything more than a most generalized kind of recollection what it was all about"); *U.S. v. McVeigh*, 153 F.3d 1166, 1181, 1184 n.6 (10th Cir. 1998) (more than one half of potential jurors were unaware of Timothy McVeigh's purported confession despite ubiquitous press coverage). There is no basis to believe that pre-trial publicity will inhibit the ability of this Court to empanel a pool of impartial jurors prepared to decide the case solely on the evidence that is presented in the courtroom.

*Second*, there has been no showing that alternatives to closure will not adequately protect Defendant's fair trial right. The Supreme Court specifically found future *voir dire* to be an adequate alternative to screen out compromised jurors, *Press-Enterprise II*, 478 U.S. at 15, and there is no reason that cannot be adequately applied here. That is particularly true in this District with its large and diverse pool of potential jurors. "[I]n a populous metropolitan area, the pool of potential jurors is so large that even in cases attracting extensive and inflammatory publicity, it is usually possible to find an adequate number of untainted jurors." *CBS, Inc. v. U.S. Dist. Ct.*, 729 F.2d at 1181; *see also, U.S. v. Griffin*, 1996 WL 140073, at *1 (S.D.N.Y. Mar. 27, 1996) (same); *In re CBS, Inc.*, 570 F. Supp. 578, 582-83 (E.D. La. 1983) (same).

*Third*, closing the courtroom for the entire hearing is not narrowly tailored. If there truly were some information to be disclosed at the hearing that could plausibly defeat defendant's fair trial right, the Court should close the courtroom only for the limited time necessary to discuss that specific information. *See Leonardo*, 129 F. Supp. 2d at 246 (bail hearing would remain open for all issues except one particular issue).

*Finally*, it is unlikely that closure will be effective in preventing publicity of anything about the allegations in this case that is not already public. Local and national media have already reported that defendant Burke has been accused of beating and threatening to kill a suspect who stole a duffel bag containing porn DVDs from his official vehicle, illegally placing a GPS device on a top county civilian official to spy on him, coercing other police officers to lie for him, and other misconduct. *See, e,g,* http://www.newsday.com/long-island/suffolk/former-suffolk-chief-poses-a-danger-to-the-community-feds-say-1.11210230?pts=683025 (reporting allegations that defendant tried to blackmail a top civilian police official, using a GPS device to spy on him, coerced underlings to lie, and threatened to exact revenge on those who spoke against him); http://nypost.com/2015/12/09/police-chief-beat-junkie-who-stole-his-porn-sex-toys-court-papers/ (reporting allegations that defendant threatened to kill a junkie who stole a duffel bag containing porn DVDs and sex toys from the defendant's official vehicle);

http://bigstory.ap.org/article/7f2f8af071f24cc8ba0bf2bca9fb670c/latest-ny-ex-police-chief-arrested-civil-rights-case (reporting allegations that defendant threatened to give a heroin addict a "hot shot" of drugs intended to kill him); http://www.nytimes.com/2015/12/10/nyregion/james-burke-former-suffolk-county-police-chief-is-arrested.html?_r=0 (detailing arrest and charges).

To the extent that the Court is concerned about such details being reported, the proverbial cat is out of the bag, and closing the detention hearing will serve no useful purpose. "Where significantly prejudicial information already has been made public, there might well be little justification" for sealing filings in a criminal trial. *Gannett Co.*, 443 U.S. at 442 (Blackmun, J., concurring in part and dissenting in part) (as to closure); *see Leonardo*, 129 F. Supp. 2d at 245 (where many details were already published in the press, court must remain open).

For these reasons, we urge the Court to withdraw its order closing the dentition hearing in this prosecution. We are prepared to appear tomorrow before the start of the detention hearing if the Court wishes to entertain oral argument on our request for access.

Respectfully submitted,

David A. Schulz

cc: Counsel of Record (via electronic mail)